UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

LOLA RAKES,

      Plaintiff

v.                                  Civil Action No. 2:09-018

FRANKLIN RUSH, individually,
and in his official capacity as a
correctional officer; GORDON CLARK,
individually, and in his capacity
as an investigator of The West
Virginia Division of Corrections;
THE WEST VIRGINIA DIVISION OF
CORRECTIONS, an agency of the
State of West Virginia; and JOHN DOE,
unknown person or persons,

      Defendants

MEMORANDUM OPINION AND ORDER

      This action was originally filed in the Circuit Court of Kanawha County on October 23, 2008.  The defendants removed on the basis of federal question jurisdiction on January 12, 2009.

      Pending are two motions to dismiss, the first filed by three of the defendants, Gordon Clark, the West Virginia Division of Corrections and "John Doe," on January 12, 2009, and the second filed by defendant Franklin Rush on January 16, 2009. Both motions seek dismissal, under Federal Rule of Civil Procedure 12(b)(6), of the plaintiff's claims on the ground that they are barred by the applicable statutes of limitations.  The

West Virginia Division of Corrections also seeks dismissal under
Rule 12(b)(6) on the grounds that it is not a "person" under 42
U.S.C. § 1983 and is not liable under the theory of respondeat
superior.

## I.  Background

The following statement of facts is drawn from the
complaint, together with pertinent admissions in the plaintiff's
response brief and the exhibits attached thereto.

On March 6, 2003, the plaintiff was incarcerated on
consecutive sentences of one to ten years each on five counts of
uttering, one count of receiving stolen property, and one count
of grand larceny. (Pl.'s Response Exhibit 1).  During her
incarceration, she was held at several West Virginia Division of
Corrections facilities.  She was incarcerated at the Lakin
Correctional Center ("Lakin") from March 6, 2003 to December 13,
2004 and then at the Anthony Correctional Center ("Anthony") from
December 13, 2004 through June 3, 2005.  (Id.).  She was
transferred back to Lakin on June 3, 2005, and remained there
until November 17, 2005, when she was transferred to the
Pruntytown Correctional Center ("Pruntytown").  (Id.).  On

January 10, 2007, she was returned to Lakin and remained there until February 8, 2007, when she was transferred to a work release program in Charleston.  (Id.).  The plaintiff was released on parole on August 23, 2007.  (Id.).

In her ten-count complaint, the plaintiff alleges that on twenty or more occasions between April and May of 2005, while she was incarcerated at Anthony, she was "sexually harassed, sexually abused and sexually assaulted" by defendant Franklin Rush, the associate warden at Anthony.  (Compl. ¶¶ 7, 9, 46; Pl.'s Response 3).  The plaintiff further alleges that after she was transferred to Lakin, she was coerced, threatened, and intimidated by defendant Gordon Clark, an investigator employed by the Division of Corrections, who caused her to "reasonably refrain from reporting the conduct of Defendant Rush to law enforcement officials or from otherwise acting to pursue her legal rights."  (Compl. ¶ 5; Pl.'s Response 2).  "Threats made by Defendant Clark to the Plaintiff included statements such as 'if you contact an attorney we will bring solicitation charges against you.'"  (Compl. ¶ 5).  Clark also allegedly coerced the plaintiff to undergo a voice stress analysis examination regarding the incident involving Rush.  (Id.).

Although it is not alleged by the plaintiff that she

3

requested an investigation of Rush's conduct, the plaintiff contends that no meaningful investigation ever occurred and that several employees of the West Virginia Division of Corrections, including Rush, Clark and others who are parties to this action under the name "John Doe," engaged in a conspiracy to avoid a criminal investigation.  (Id. at ¶¶ 43-47).

The plaintiff's complaint asserts the following ten counts, numbered One through Ten, some of which overlap with one another, one of which has since been dismissed by stipulation (Count Seven), and two of which alleges damages only (Counts Five and Eight):

One       That the defendants deprived her of constitutional
          rights protected by the West Virginia and United States
          Constitutions, including the Fourth, Eighth and Ninth
          Amendments;

Two       That Rush engaged in extreme and outrageous conduct and
          that the defendants, jointly and severally, caused the
          plaintiff to suffer severe emotional distress, giving
          rise to a claim of compensatory damages against each
          defendant and punitive damages against Rush;

Three     That the defendants invaded her right to privacy;

Four      That the Division of Corrections is liable for the

4

conduct of defendants Rush and Doe by reason of the doctrines of respondeat superior, agency, negligent retention, and negligent failure to properly supervise and train its employees;

Five     That the conduct of defendants Rush, Clark and Doe was such that it justifies an award of compensatory and punitive damages;

Six     That Rush, Clark and Doe committed the following state common law torts: sexual harassment and unwelcome solicitations for sexual favors, unwelcome touching in a sexual manner, civil battery, civil assault, sexual assault, intentional infliction of emotional distress, outrageous and atrocious conduct, invasion of privacy, civil conspiracy, and "other statutory and common law causes of action, including but not limited to, common law negligence against Defendant Doe";

Seven     That Rush's conduct violated the public policy of the State of West Virginia as reflected in the provision of West Virginia Code §§ 61-8B-10 and 61-2-9(b), (c);[1]

Eight     That as a direct and proximate result of the defendants' conduct as alleged in Counts One through

---

[1] On March 24, 2009, the parties filed a stipulation of voluntary dismissal of Count Seven.

5

Seven, the plaintiff has suffered "anxiety, past and future," humiliation, annoyance and inconvenience, invasion of privacy, emotional distress, pain and suffering, mental anguish, loss of her ability to enjoy life, actual and future medical and pharmaceutical expense, and other damages;

Nine    That the defendants, including Rush, Clark and Doe, engaged in a civil conspiracy with the purpose of avoiding a criminal investigation by the federal, state and local law enforcement officials as to the sexual assault of the plaintiff, and that the Division of Corrections negligently failed to properly investigate the incidents of sexual assault; and

Ten     That the Division of Corrections negligently hired and retained defendants Rush, Clark and Doe, and has also negligently failed to supervise and properly train them.

In response to the defendants' motions to dismiss the plaintiff's action as time barred, she asserts that she was deterred from pursuing a civil action by the threatening remarks made by Rush and Clark, including threats to bring solicitation charges against her. She also states that she was aware of types

6

of retaliation that can be visited upon an inmate by prison staff, including loss of "good time" credits, pretextual writeups and allegations of misconduct, and placement in punitive segregation or in a cell with a violent cell mate.

## II. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6).

Application of the Rule 12(b)(6) standard requires that the court "'accept as true all of the factual allegations contained in the complaint . . . .'" Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (quoting Twombly, 127 S. Ct. at 1965); see also South Carolina Dept. Of Health And Environmental Control v. Commerce and Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)). The court is additionally required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor . . . ."

7

Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

A limitations challenge constitutes an affirmative defense.  As such, the defense is often not appropriate for disposition under Rule 12(b)(6).  See Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (noting a Rule 12(b)(6) challenge, "which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred.").  An exception exists for the "relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint . . . ."  Id.  The exception is strictly construed, requiring that all "facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'"  Id. (quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)).

8

### III. Statute of Limitations

A. The State Claims

With respect to the plaintiff's state law personal injury claims, the statute of limitations is two years as set forth in West Virginia Code § 55-2-12(b) which states as follows:

> Every personal action for which no limitation is otherwise prescribed shall be brought: . . . (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries. . . .

W. Va. Code § 55-2-12(b); see Travis v. Alcon Labs., Inc., 202 W. Va. 369, 382, 504 S.E.2d 419, 432 (1998) (applying two-year statute of limitations of § 55-2-12(b) to claims for severe emotional distress and tort of outrage); Courtney v. Courtney, 190 W. Va. 126, 437 S.E.2d 436 (1993) (claims for infliction of emotional distress and assault and battery are governed by the two-year limitations period of § 55-2-12(b)); Harrison v. Davis, 197 W. Va. 651, 478 S.E.2d 104, 108 n.8 (1996) (observing that "[p]ersonal injury actions are governed by the general tort [two-year] statute of limitations found in W. Va. Code 55-2-12(b)."). Plaintiff's claims for negligent hiring, retention, supervision, and failure to train are also subject to the two-year statute of limitations of § 55-2-12(b) inasmuch as

9

they arise from alleged personal injuries.  See <u>Casto v. Dupuy</u>,
204 W. Va. 619, 623, 515 S.E.2d 364, 368 (1999).

        Plaintiff's invasion of privacy claim, however, is
subject to the one-year statute of limitations found in West
Virginia Code § 55-2-12(c), which provides that actions shall be
brought "(c) within one year next after the right to bring the
same shall have accrued if it be for any other matter of such
nature that, in case a party die, it could not have been brought
at common law by or against his personal representative."  W. Va.
Code § 55-2-12(c); <u>see</u> <u>Slack v. Kanawha County Hous. &</u>
<u>Redevelopment Auth.</u>, 188 W. Va. 144, 423 S.E.2d 547, 551 (1992).


B. The § 1983 Claims


        No federal statute of limitations specifically applies
to § 1983 actions; instead, the applicable time period must be
borrowed from the analogous state statute of limitations.  <u>Nat'l</u>
<u>Adver. Co. v. City of Raleigh</u>, 947 F.2d 1158, 1161 (4th Cir.
1991).  "Where state law provides multiple statutes of
limitations for personal injury actions, courts considering §
1983 claims should borrow the general or residual statute for
personal injury actions."  <u>Owens v. Okure</u>, 488 U.S. 235, 249-50

10

(1989) (internal citations omitted).  The question of whether the statute of limitations is tolled is likewise resolved by reference to state law.  Bd. of Regents v. Tomanio, 446 U.S. 478 (1980).

The plaintiff's § 1983 claims are based upon her allegations of personal injury arising from the alleged sexual assaults by Rush and the actions of Rush and Clark in trying to cover up the assaults by threats and intimidation.  These allegations are contained in Count One of the complaint and, according to the plaintiff, arise under the Fourth, Eighth, and Ninth Amendments.  Inasmuch as the § 1983 claim is based upon alleged personal injuries, the most analogous state statute of limitations is the two-year statute set forth in West Virginia Code § 55-2-12(b).  See Morales v. Robinson, No. 2:05-cv-509, 2007 WL 1074836, *4 (S.D. W. Va. April 6, 2007) (Copenhaver, J.); Bell v. Bd. of Educ. of County of Fayette, 290 F. Supp. 2d 701, 709 (S.D. W. Va. 2003) (Haden, J.).

C. Accrual

The United States Supreme Court has recently recognized that "the accrual date of a § 1983 cause of action is a question

11

of federal law that is not resolved by reference to state law."
Wallace v. Kato, 549 U.S. 384, 388 (2007).  A claim accrues when
the affected party knew or should have known of the injury that
is the basis of the action.  Nat'l Adver., 947 F.2d at 1161-62.
With respect to plaintiff's state law tort claims, under West
Virginia law those claims generally accrue when the tort
occurred.  Merrill v. W. Va. Dep't of Health & Human Res., 219 W.
Va. 151, 632 S.E.2d 307, 312 (2006).

Here, the plaintiff's allegations establish that she
knew of the sexual assaults between April and May of 2005, when
they were occurring.  Accordingly, both plaintiff's § 1983 and
state law claims accrued by the end of May 2005 with respect to
the sexual assaults, and the statute of limitations began to run.
Inasmuch as the plaintiff's claims based upon the assaults were
not brought within the time frame prescribed by the statute of
limitations, they are barred absent an excuse for her delay.

It is unclear from the complaint or the admissions in
the plaintiff's response brief, however, when the threats by Rush
and Clark ceased, and so the court is unable to determine on a
Rule 12(b)(6) motion when the plaintiff's claims based on the
threats accrued.

12

D. Tolling


        The court looks to West Virginia law to determine

whether the statute of limitations is tolled with respect both to

the plaintiff's § 1983 claims and her state law personal injury

claims based on the assaults.  Bd. of Regents, 446 U.S. at

486-88.  Inasmuch as the plaintiff does not allege that she was

unaware of the assaults as they were occurring, it does not

appear that the statute of limitations would be tolled by the

discovery rule.  See Gaither v. City Hospital, Inc., 199 W. Va.

706, 487 S.E.2d 901 (1997); Cart v. Marcum, 188 W. Va. 241, 423

S.E.2d 644, Syl. pt. 1 (1992).  Moreover, the statute of

limitations is not tolled under West Virginia law simply because

a person is incarcerated.  Craigo v. Marshall, 331 S.E.2d 510,

513 (1985).


        The plaintiff contends that the statute of limitations

was tolled under the doctrine of equitable modification.  The

West Virginia Supreme Court has recognized two types of equitable

modification of a statute of limitations.  Indep. Fire Co. No. 1

v. W. Va. Human Rights Comm'n, 180 W. Va. 406, 376 S.E.2d 612,

614 (1988).  The first is equitable tolling, "which often focuses

on the plaintiff's excusable ignorance of the limitations period

                              13

and on lack of prejudice to the defendant," and the second is
equitable estoppel "which usually focuses on the actions of the
defendant." Id. (citation omitted).  Addressing estoppel
generally, the West Virginia Supreme Court has observed that it
"applies when a party is induced to act or to refrain from acting
to her detriment because of her reasonable reliance on another
party's misrepresentation or concealment of a material fact."
Ara v. Erie Ins. Co., 182 W. Va. 266, 387 S.E.2d 320, Syl. Pt. 2
(1989).  The court has further warned that "[t]he doctrine of
estoppel should be applied cautiously, only when equity clearly
requires that it be done."  Samsell v. State Line Dev. Co., 154
W. Va. 48, 174 S.E.2d 318, Syl. Pt. 7 (1970).  Inasmuch as the
plaintiff makes no allegations of reliance on misstatements made
by any of the defendants or otherwise argues excusable ignorance,
neither of these two doctrines appears to be applicable.

     The plaintiff further contends that the statute of
limitations should be tolled under the doctrine of obstruction of
prosecution, as set forth in West Virginia Code § 55-2-17.  That
statute provides in pertinent part:

     Where any such right as is mentioned in this article
     shall accrue against a person . . . if such person
     shall . . . by . . . concealing himself, or by any
     other indirect ways or means, obstruct the prosecution
     of such right, . . . the time that such obstruction may
     have continued shall not be computed as any part of the

14

time within which the said right might or ought to have
been prosecuted.

W. Va. Code § 55-2-17.

To prevail under this statute the plaintiff must show
that the defendants engaged in some affirmative act designed to
positively obstruct the prosecution of the action.  Thompson v.
Whitaker Iron, Co., 41 W. Va. 574, 23 S.E. 795 (1895).
Obstruction by the defendant must be by a positive act; mere
silence will not constitute obstruction sufficient to toll the
running of the statute of limitations.  Hundley v. Martinez, 151
W. Va. 977, 158 S.E.2d 159 (1967).

Although all of the West Virginia cases applying this
statute involve circumstances in which the defendants concealed
the existence of liability from the plaintiff, the court notes
that the language of the statute does not limit tolling to such
circumstances.  Rather, it provides that a statute of limitations
will be tolled for the time during which a person "obstruct[s]
the prosecution" by any "indirect ways or means."  The plaintiff
contends that the defendants prevented her from pursuing her
legal rights by threatening her with solicitation charges and
other forms of retaliation that would affect the circumstances of
her imprisonment, and that these threats caused her to

"reasonably refrain from reporting the conduct of Defendant Rush to law enforcement officials or from otherwise acting to pursue her legal rights." (Compl. ¶ 5). The defendants respond that the plaintiff was only under the thumb of Rush and Clark while she was at Anthony and Lakin, and that she could have instituted her action while she was at Pruntytown or on work release in Charleston. While the court finds this argument to be of some persuasion, the allegations in the complaint and the admissions in the plaintiff's response brief, read in the light most favorable to the plaintiff, do not sufficiently indicate that she was no longer exposed to the threats after she left Anthony and then Lakin in November 2005 such that her claims could be dismissed on a Rule 12(b)(6) motion, particularly inasmuch as she could have been returned to Lakin, as she was in January 2007.

The defendants analogize the plaintiff's allegations to those considered by the court in Morales v. Robinson, No. 2:05-cv-509, 2007 WL 1074836 (S.D. W. Va. April 6, 2007). Indeed, the allegations in the Morales complaint are nearly word-for-word identical to the allegations in the plaintiff's complaint. Like the plaintiff here, Morales contended that the statute of limitations should be tolled because she was subjected to threats by one of the prison guards. Morales, 2007 WL 1074836 at *6.

16

The court rejected this argument, but the court's reason for doing so highlights circumstances in Morales's case that make it distinguishable from the facts asserted here.  Id.  Morales alleged that she had spoken to someone whom she believed to be a prosecutor and had given a detailed seven-page account of the sexual assaults.  Id.  The court reasoned that these actions conclusively established that Morales was not deterred by the alleged threats.  Id.  Unlike Morales, the plaintiff has not alleged any facts that would indicate she was not genuinely fearful of retaliation by Rush, Clark, and the Doe defendants or that her fear was not reasonable.  Accordingly, the court concludes that the plaintiff's allegations are sufficient to survive dismissal under Rule 12(b)(6).

IV.  Section 1983 Claims Against the Division of Corrections

The West Virginia Division of Corrections contends that the plaintiff's § 1983 claims against it should be dismissed because it is a state agency and, as such, is not a "person" within the meaning of § 1983.  The plaintiff did not respond in opposition to this argument.

Indeed, the Division of Corrections is an arm of the

17

State of West Virginia, <u>Berry v. Rubenstein</u>, No. 01:07-cv-535, 2008 WL 1899907, at *2 (S.D. W. Va. April 25, 2008) (Faber, J.), and is not a proper defendant to a § 1983 claim.  <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989) ("[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983.").  The plaintiff's § 1983 claims should be dismissed to the extent that they are alleged against the West Virginia Division of Corrections.

### V. Respondeat Superior Allegations

The Division of Corrections further contends that the state claims against it should be dismissed to the extent they are based on a theory of respondeat superior because the plaintiff has not alleged that defendants Rush, Clark or Doe were acting within the scope of their employment when they were committing the allegedly tortious acts and because the plaintiff alleges that Rush, Clark and Doe conspired to conceal the assaults from federal, state and local law enforcement authorities.  The plaintiff did not respond to either argument.

In West Virginia, a principal can be held liable for the torts of another, including intentional torts, under the

18

doctrine of respondeat superior if it can be shown that the other is an agent and is acting within the scope of his employment when he commits the tort. <u>Travis v. Alcon Labs., Inc.</u>, 202 W. Va. 369, 381, 504 S.E.2d 419, 431 (1998); <u>Barath v. Performance Trucking Co., Inc.</u>, 188 W. Va. 367, 370, 424 S.E.2d 602, 605 (1992). "[A] servant is acting within the course of his employment when he is engaged in doing, for his master, either the act consciously and specifically directed or any act which can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of that act or a natural, direct and logical result of it." <u>Courtless v. Jolliffe</u>, 203 W. Va. 258, 262, 507 S.E.2d 136, 140 (1998). Determining the scope of employment requires consideration of surrounding circumstances including the character of the employment, the nature of the wrongful act, the time and place of its commission and the purpose of the act. <u>Id.</u>

The plaintiff has plead that Rush, Clark and Doe were employees and agents of the Division of Corrections and that the Division of Corrections is liable under the doctrine of respondeat superior. (Compl. ¶¶ 5-7, 34). However, it cannot be said that Rush was acting within the scope of his employment when he assaulted the plaintiff or that Rush, Clark or Doe were acting

19

within the scope of their employment when they conspired to conceal Rush's assaults from federal, state and local law enforcement.  The plaintiff does not allege that the assaults or the threats were consciously and specifically directed by the Division of Corrections nor can the assaults or threats fairly and reasonably be deemed to be an ordinary and natural incident to their employment.  As alleged, each appears to be an intentional act done in furtherance of selfish motives rather than in the interests of the Division of Corrections. Accordingly, the plaintiff's allegations against the West Virginia Division of Corrections under the theory of respondeat superior are dismissed.

## VI. Conclusion

Based upon the foregoing, it is ORDERED that Rush's motion to dismiss be, and it hereby is, denied.  It is further ORDERED that the motion to dismiss of the West Virginia Division of Corrections, Clark and "Doe," be, and it hereby is, granted to the extent it seeks dismissal of the § 1983 claims against the Division of Corrections as well as the allegations based on the theory of respondeat superior, and otherwise denied.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED:   August 4, 2009

John T. Copenhaver, Jr.
United States District Judge